Dear Representative Ribaudo:
This letter is in response to your request for an opinion of this office asking the following question:
 How do you effect a partial release on a Deed of Trust with a future advance clause when no note is presented at the time of original record and the law on partial release requires a note to be presented?
The elaborate statute relating to deeds of trust containing future advances or obligations clauses, § 443.055, RSMo includes these provisions:
* * *
 2. Instruments [e.g., mortgage or deed of trust] may secure future advances or other future obligations of a borrower to a lender, made or incurred within ten years after the date such instruments are executed, . . . . The future advances or future obligations may be evidenced by one or more notes . . . evidencing indebtedness of the borrower to the lender, which . . . shall not be required to be executed or delivered prior to the date of the instrument securing them. . . . The fact that an instrument secures future instruments or future obligations shall be clearly stated on the face of the instrument . . . and the instrument shall state the total amount of the obligations which may be secured. . . .
* * *
 6. As to any third party who may acquire any rights in or lien upon the encumbered real property, the priority of the lien securing any such future advances or other future obligations shall date from the time the instrument is filed of record, whether . . . any third party has actual notice of any such advances or additional obligations. . . .
 7. At any time subsequent to the execution of an instrument, the borrower may send a notice to the lender . . . stating therein that the borrower elects to terminate the operation of the instrument as security for future advances or future obligations made or incurred after the date the lender receives the notice . . . [T]he lender shall . . . file of record . . . a statement referring to the original instrument, legally describing the real property therein, setting forth the fact of receipt of the borrower's notice, . . . and stating the total principal amount as of the date it [the lender] received the borrower's notice of all outstanding debts and obligations secured by the instrument. No advances made by the lender to the borrower after the date the lender receives the notice . . . shall be secured by the instrument, and the total debts so secured shall be limited in principal amount to the amount stated by the lender in its recorded notice by which statement the lender will be irrevocably bound. . . . Should the lender fail to file the statement . . ., the borrower may file a similar statement, and the lender shall be irrevocably bound by the borrower's statement of the total principal amount of the outstanding debt and other obligations secured by the instrument, so long as the borrower's statement is made in good faith . . .,
* * *
 11. Identification of documents evidencing debts under which future advances or future obligations are to be made, secured by an instrument, need not be presented to the recorder in accordance with sections 443.040 and 443.050, nor shall such document evidencing indebtedness need to be presented for cancellation in the presence of the recorder in accordance with section 443.060, when a full deed of release of a deed of trust securing future advances or future obligations is presented for recording.
 12. No future advance or future obligation shall be secured by an instrument . . . unless the note . . . or other evidence of indebtedness . . . shall state on its face that such note . . . or other evidence of indebtedness is secured by such instrument. . .
* * *
 § 443.055 (H. B. No. 1409, 82nd G.A.; L.Mo. 1984, pp. 697-700).
The other statutes to which reference is made in Subsection 11
of the just quoted statute, to wit; §§ 443.040, -.050, and -.060,
provide as follows:
 1. Hereafter when any mortgage or deed of trust or other lien to secure the payment of any specific obligation is created on real estate by an instrument to be filed in the office of the recorder of deeds . . ., the instrument evidencing such debt or debts or obligations so secured may be presented to the recorder . . . and the recorder shall . . . stamp or write upon such note, or other promissory evidence of debt so secured, an identification thereof as being the note or other evidence of debt described by such security instrument.
* * *
 3. In certifying to releases where the secured instruments have been so identified, the recorder shall certify that such identified instruments were produced and canceled or properly noted, as the case may be. § 443.040 (S.B. No. 447, 45th G.A.; L.Mo. 1909, pp. 698-699) (emphasis added)
 1. In all cities in this state which now have or may hereafter have six hundred thousand inhabitants or more, and in all counties of class one and two, when any mortgage or deed of trust or other instrument intended to create a lien upon the real estate to secure the payment of a debt or obligation evidenced by an instrument or instruments in writing, shall be filed for record, the instrument or instruments representing the principal of such debt or obligation or any part thereof shall be presented to the recorder of deeds . . . and the recorder shall . . . stamp or write upon each such instrument evidencing principal [sic] so secured an identification thereof as being a note, bond or other evidence of debt described by such mortgage, deed of trust or other instrument of security.
* * *
 3. In certifying to releases where the secured instruments have been so identified, the recorder shall certify that such identified instruments were produced and canceled or properly noted, as the case may be.
* * *
 § 443.050 (S.B. No. 109, 57th G.A.; L.Mo. 1933, pp. 191-192) (emphasis added)*
 1. If any mortgagee, cestui que trust, or assignee . . . receive full satisfaction of any mortgage or deed of trust, he shall . . . acknowledge satisfaction . . . on the margin of the record thereof, or deliver to . . . [the maker] . . . a sufficient deed of release . . . [W]hen any mortgage or deed of trust shall be satisfied by a deed of release, the recorder shall note on the margin of the record of such deed of trust the book and page where such deed of release is recorded. In case satisfaction be acknowledged by the payee or assignee, or in case a full deed of release is offered for record . . ., the note or notes secured shall be produced and canceled in the presence of the recorder, who shall enter that fact on the margin of the record and attest the same with his official signature; . . . [N]o full deed of release shall be admitted to record unless the note or notes are so produced and canceled. . . .
 2. If such note or notes are not presented for cancellation for the alleged reason that they have been lost or destroyed, the recorder, before allowing any entry of satisfaction to be made on the record or any deed of release to be placed on the file or record, shall require the cestui que trust . . . or his legal representative, to make oath, in writing, stating that the note or other evidences of debt have been paid and delivered to the maker thereof or his representative, and the recorder shall also require the maker thereof of such note or notes, or his legal representative, to make affidavit . . . that the note or notes in question have been paid, and cannot be produced because lost or destroyed, . . .
 3. In case any mortgagee, cestui que trust or assignee . . . shall desire to release the property described in any deed of trust without receiving full satisfaction of the debt, note or obligation thereby secured, he shall be permitted to do so by presentation to the recorder of the notes or other obligations evidencing the principal of the debt secured thereby, or accounting for them by affidavits . . . as . . . in the case of full release, and the recorder shall note the fact of such full release on the margin of the record of such deed of trust or, if such release is made by deed of release, shall note the fact of the filing for record of such release, and of the presentation of such notes or other obligations, or accounting therefor, on such notes or obligations . . . but shall not cancel such notes or other obligations; . . . § 443.060**
Your question alludes to the "law on partial release",***
which we suppose is a reference to §§ 443.090, -.100, and -.110,
which provide:
 In case any person desires to release any part of the property described in any deed of trust or mortgage by marginal record or deed of release, he shall be permitted to do so by the recorder on presentation to the recorder of the notes or other obligations evidencing the principal of the debt secured thereby, or accounting for them by affidavits . . . as . . . in the case of full release, and the recorder shall note the fact of such partial release on the margin of the record of such deed of trust or, if such release is made by deed of release, shall note the fact of the filing for record of such partial release, and of the presentation of such notes or other obligations, or accounting therefor, on such notes or other obligations . . . and on the margin of the record of such deed of trust or mortgage, but shall not cancel such notes or other obligations; . . . § 443.090****
 In cases where a number of notes are named in any mortgage or deed of trust, on payment of any one or more of such notes, the maker thereof may present the same to the recorder, and the recorder shall cancel the same and make a memorandum of such presentation and cancellation on the margin of the record of such mortgage or deed of trust. § 443.100*****
 Whenever any mortgage or deed of trust . . . providing for the issue of a series of notes or bonds aggregating one hundred thousand dollars or more . . . secured in whole or in part by property located in this state, . . . confers authority upon the trustee . . . to release the property or any part thereof encumbered by any such mortgage or deed of trust from the lien thereof, such release may be so made and it shall be the duty of the recorder of deeds . . . to accept and record in the proper records any deed of release executed . . . by such trustee . . . without the notes or bonds secured by such note or deed of trust being produced; . . . § 443.110 (S.B. No. 74, 47th G.A.; L.Mo. 1913, pp. 162-163)
The legislation condoning (§ 443.040) or requiring (§ 443.050) the presentation to the recorder of deeds of the document evidencing the indebtedness (e.g., promissory note) which is being secured by a deed of trust (mortgage) on land in this state was presumably inspired by a concern for a mechanism whereby the deed of trust could only be cancelled upon the authority of the current owner of the indebtedness (§ 443.060). In Lee v. Clark andothers, 1 S.W. 142 (Mo. 1886), the Missouri Supreme Court observed:
 The simple question for determination is, can the payee of a note secured by a deed of trust, after he has assigned the note, discharge the property of the lien, as between a bona fide purchaser of the property and the assignee of the note, by entering satisfaction of the debt, on the margin of the record, or otherwise. It has been repeatedly and uniformly held in this state that the assignment of a note before maturity, secured by a deed of trust, carries the trust as an incident. . . . 1 S.W. at 143
 . . . These recent decisions are in harmony with those which held that the security passed as an incident with the assignment of the note, and are decisive of the question involved in this case; and to the question, what shall one desiring to purchase do under such circumstances as are disclosed by this record? The answer is, let it alone until he can ascertain who holds the note. He is under no obligation to buy, and prudence would dictate that he should not buy until satisfied that the owner of the note had entered satisfaction of the debts. It may embarrass persons desiring to purchase, and it might be well for the legislature to require a memorandum of the assignment of the note to be entered upon the margin of the deed of trust or mortgage. 1 S.W. at 144
Similarly, the court in Hagerman v. Sutton, 4 S.W. 73 (Mo. 1887) remarked:
 . . . When plaintiff purchased the note, the mortgage passed with it as an incident thereto. . . . And when a note is underdue when transferred, and is negotiable, the presumption arises of want of notice, . . . . The mortgage, being the incident, partakes of the negotiability of its principal, to wit, the note, without any formal assignment or delivery, or even mention, of the former. But for the note, the mortgage never would have existed. It owes its birth and being to the note, and ceases to exist when the latter is discharged.
 . . . Prima facie he took the mortgage, as he took the note, upon the same footing of equity, and with the same rights, that equity accords to both instruments. No hidden lien, undisclosed priority, or secret trust, between Downing [mortgagee-assignor] and any third person could affect his interests, or his claims, to full satisfaction out of the mortgaged premises.. . .
 . . . [A]fter Downing parted with his title to the note, it was out of his power to release any portion of the mortgaged premises. . . . 4 S.W. at 78
The statutory mechanism designed to insure that only the present owner of an indebtedness secured by land authorize the cancellation (release) of a deed of trust (§ 443.060) is not fool-proof, as witnessed in Ripley National Bank v. Connecticut MutualLife Insurance Co. et al., 47 S.W. 1 (Mo. 1898):
 . . . It appeared clearly upon the trial that this pretended note was a forgery, prepared and produced for the purpose for which it was used, and that the release was executed, and the recorder's attestation was procured, while the genuine note was in the plaintiff bank in Ohio. . . . 47 S.W. at 3
 . . . That the respondent [Ripley], as indorsee and holder of the note, was the real cestui que trust, and the only party authorized by law to release the deed of trust on the margin of the record thereof, is beyond question. Rev. St. 1889, § 7094. That the release was not executed by the respondent, through or by any of its officers or agents acting for it, or by any person assuming to act for it, or in its name, and that C. Newkirk and J. C. Thompson [payees-indorsers], who signed the release, in their own names and for themselves, had no power to release the deed of trust, is also beyond question. Why, then, should not this void release be canceled and set aside? The answer to this question returned by the appellant [maker-mortgagor] is that the debt to secure which the deed of trust was given has been paid by the appellant and he is entitled to have satisfaction entered of record formally by the respondent. . . . 47 S.W. at 5
 . . . [W]hen Thompson, instead of remitting the amount of respondent's debt to it, at Ripley, and charging the same to appellant's account, as he had been authorized by appellant to do, converted the same to his own use, . . .; and thus it turned out, by the malfeasance of the appellant's own agent, to whom he had given the power and to whom he had intrusted the duty of paying off this debt, the same was not paid by the appellant, nor by any person for him. . . . The appellant's defense of payment failed along the whole line. . . . 47 S.W. at 6
A similar situation was described by the court in Cooper v. Newellet al., 172 S.W. 326 (Mo. 1914):
 . . . This amendment does not authorize anyone to enter satisfaction who was not previously authorized to do so. It simply attempts to guard against a false release by the cestui que trust named in the mortgage by requiring of him and of the maker affidavits which, if falsely made, subject affiant to the pains and penalties of perjury. Had the legislature intended by this provision to authorize anyone other than the lawful holder of a note to release a deed of trust or mortgage securing it, it could easily have said so. Until it does plainly say so, this court ought not by strained construction torture a meaning from the statute which the language does not justify and which would put an end to the negotiation of notes secured by mortgages and deeds of trust except in cases in which buyers of such notes were willing to take them at the risk of losing the security in case the cestui que trust and maker of the note ignorantly or fraudulently made the statutory affidavits and entered satisfaction. 172 S.W. at 328-329
We perceive no reason why the legislature cannot prospectively alter or abolish the traditional statutory mechanism which was designed to assure that a deed of trust could only be released by the current owner of the secured indebtedness. The 1933 legislation relating to any indebtedness exceeding One Hundred Thousand Dollars ($100,000) secured by land eliminated the requirement that the document evidencing the indebtedness be presented for inspection or cancellation or notation by the recorder at the time of release of the deed of trust. § 443.110. It appears that, wisely or not, the 1984 legislation (§ 443.055) has abolished any requirement that, in the case of a deed of trust securing future monetary advances from the beneficiary (cestui que trust) to the grantor, the document evidencing the indebtedness ever be presented for inspection or notation by the recorder of deeds, whether at the time such deed of trust is first placed of record or at such later time as it is fully released of record.
However, since Subsection 11 of § 443.055 does not specifically or expressly exempt deeds of trust securing future advances or obligations from the provisions of §§ 443.090 and -.100 relating to partial releases of deeds of trust, we believe that to partially release a deed of trust bearing a future advances or obligations clause, it is necessary to produce for inspection and notation (.090) or cancellation (.100) by the recorder any and all documents evidencing the indebtedness (or an affidavit accounting for them) secured by such deed of trust. This result is perhaps anomalous, given that such documentary evidence of the indebtedness may never have been seen by the recorder prior to the act of partial release of the deed of trust, but this, we feel, is a matter for the legislature to address and change or correct.
Therefore it is our view that subsection 11 of § 443.055, eliminates the presentment requirement only when a full deed of release of a deed of trust securing future advances or obligations is presented for recording. A partial release of a deed of trust with a future advance clause can only be effected if the note or an appropriate affidavit is presented to the recorder pursuant to § 443.090.******
Very truly yours,
 WILLIAM L. WEBSTER Attorney General
* The population of the City of St. Louis in 1933 was 821,960. No other Missouri city, then or now, has surpassed a population of 600,000.
** The essential concept of this statute is quite old. SeeL. Mo. 1835, p. 210. The substantial form of the present statute appears to date from L. Mo. 1887, pp. 224-225. The last repeal and reenactment of this statute was in H.B. No. 226, 78th G.A.
(L.Mo. 1975, pp. 391-396).
*** The black letter title to § 443.060, RSMo is Acknowledgmentof satisfaction and release, how made — Partial release, how made.
The last four words were (misleadingly, we think) added to this title in H.B. No. 226 of 1975 evidently because of the addition of subsection 3 to the statute allowing the owner of the land securing a debt to release the security of the land even though the debt itself remained.
**** The substantial form of these statutes dates from at least as early as L. Mo. 1897, p. 203.
***** The substantial form of these statutes dates from at least as early as L. Mo. 1897, p. 203.
****** We make no representation as to the weight to be accorded any particular release, and the degree of reliance thereon should be a matter of judgment and discretion on the part of the prospective purchaser of the affected property.